# United States District Court

FILED by ___ D.C.
AUG 1 1 2000
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

SOUTHERN _____ DISTRICT OF _____ FLORIDA

UNITED STATES OF AMERICA

V.

FRANKLIN GELL

## CRIMINAL COMPLAINT

CASE NUMBER: $00-4199-BSS$

*(Name and Address of Defendant)*

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about July 7, 2000, July 28, 2000, and August 10, 2000, in Broward County, in the Southern District of Florida the defendant did,

distribute (July 7 and 28, 2000) and possess with the intent to distribute (August 10, 2000) Methylenedioxy Methamphetamine (MDMA), commonly referred to as "ecstasy," a Schedule I controlled substance,

in violation of Title 21 United States Code, Section 841(a)(1)

I further state that I am a(n) DEA Special Agent and that this complaint is based on the following facts:

Please see attached affidavit.

Continued on the attached and made a part hereof: [x] Yes [ ] No

Signature of Complainant
Gregory P. Giacomino
Drug Enforcement Administration, Task Force Officer

Sworn to before me, and subscribed in my presence,

August 11, 2000          at      Fort Lauderdale, Florida
Date                              City and State

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer           Signature of Judicial Officer

## AFFIDAVIT

I, Gregory P. Giacomino, being duly sworn, deposes and states:

1.    I am a Detective employed by the Margate Police Department and currently assigned as a Task Force Agent with the Drug Enforcement Administration (DEA) at the Fort Lauderdale District Office. I have been assigned to the DEA for approximately one year. I have been employed with the Margate Police Department in Broward County, Florida for four years. While employed with the Margate Police Department, I served as a Narcotics and Vice Detective for approximately one year. The previous three years I served as a patrolman. Prior to my employment with the Margate Police Department, I was employed as a correctional probation officer with the Florida Department of Corrections for approximately five and a half years. I have received numerous hours of specialized training in the area of drug law enforcement. I have conducted and participated in numerous federal, state, and local investigations involving drug importation, drug distribution, laundering of monetary instruments, and conspiracy to commit those offenses. As a result of my education, training, and experience, I am familiar with the means and methods used to violate the drug laws of the United States. The facts contained in this affidavit are not all the facts regarding this matter known to the affiant, but only those facts necessary to determine probable cause. The information contained in this document is known to me through personal observation as well as information that has been provided to me by other law enforcement officers and agents.

2.    In July 2000, a Margate Police Department confidential source (hereafter referred

to as the CS) furnished Task Force Officer Gregory Giacomino and Detective Greg Wood of the Margate Police Department with information that Franklin GELL (hereafter referred to as GELL) has the ability to supply in the South Florida area multi-thousand tablets weekly of Methylenedioxy Methamphetamine (MDMA), a Schedule I controlled substance commonly referred to as "ecstasy." The CS further advised that he had a continuing relationship with GELL that consisted of biweekly meetings during which the CS would pay GELL for MDMA pills GELL had previously provided to the CS, and GELL would provide additional MDMA pills to the CS.

3.    On July 6, 2000, at approximately 8:00 p.m., the CS made a taped telephone call to Franklin GELL, attempting to finalize a MDMA transaction. During the conversation, it was determined that the transaction would be delayed until July 7, 2000.

4.    On July 7, 2000, at approximately 6:00 p.m., the CS contacted TFO Giacomino and Margate Police Detective Greg Wood and advised that the CS had spoken with GELL and that GELL wanted to meet with the CS to be paid for 350 tablets of MDMA that GELL had previously provided the CS, and to "front" (furnish on consignment) the CS more MDMA tablets.

5.    On July 7, 2000, at approximately 8:20 p.m., surveillance was established in the area of Prime Cuts Hair Salon at 1132 Weston Road, in Weston, Florida, where the transaction was to occur. The CS informed agents/officers that the hair salon was a business where GELL'S girlfriend (Elisa Martin) worked. Upon arrival in the area of the business, S/A Dauphinais observed a Hispanic male inside the salon matching the description of GELL. At approximately 8:25 p.m., S/A Flowers observed a black BMW bearing Florida tag LRW

2

563, and a silver Volkswagen Passat, bearing Florida tag UVQ 86B, parked to the rear of the hair salon. These vehicles had previously been identified by the CS to agents as being owned by GELL (the BMW) and MARTIN (the Volkswagen). A records check of the tags confirmed this information.

6. On July 7, 2000, at approximately 8:33 p.m., the CS arrived in the parking lot of Prime Cuts Salon and telephoned GELL to advise him (GELL) that he (the CS) was in the parking lot. At approximately 8:36 p.m., surveillance observed GELL exit the hair salon and walk to the CS' vehicle and enter the passenger side of same. Once GELL entered the vehicle, a hand to hand transaction occurred during which the CS gave GELL $3,325 and GELL handed the CS a clear plastic baggie containing approximately 415 MDMA tablets. A brief conversation occurred during which GELL advised the CS that he (GELL) could provide the CS with a few thousand tablets of MDMA. GELL also made reference to a few other (as yet unknown) individuals with whom he dealt several thousand MDMA tablets weekly. The meeting was audio recorded and still photographs were taken.

7. On July 25, 2000, the CS made a taped telephone call to GELL, attempting to finalize a MDMA tablets transaction. During the conversation, GELL indicated that he was busy in Dade County and would not come to meet with the CS that evening. Reference was made to GELL and the CS meeting at a later time.

8. On July 28, 2000, at approximately 3:00 p.m., TFO Giacomino received a telephone call from the CS who advised that he (the CS) had spoken to GELL and that GELL had indicated that he could meet with the CS at "the restaurant." The CS further advised that "the restaurant" is code used by GELL for Martin's apartment located at 8001 Fairview

3

Drive, #207, Tamarac, Florida. At approximately 8:00 p.m., surveillance was established in the area of Martin's apartment. S/A Hahn observed GELL'S BMW in the parking lot of the apartment and also saw GELL exit and then re-enter Martin's apartment. At approximately 8:30 p.m., the CS entered Martin's apartment and observed a clear plastic baggie of pills on the table. The CS handed GELL $3,945 and was given the baggie of pills by GELL. The CS and GELL exited the apartment and had a conversation during which GELL told the CS that he (GELL) could provide the CS with 2,000 tablets of MDMA weekly. GELL also made reference to another individual that he supplied with multi-thousand tablets of MDMA weekly. The CS and GELL parted and the CS subsequently surrendered the 500 tablets of MDMA to agents. The meeting was audio recorded.

9.   On August 8, 2000, the CS contacted TFO Giacomino and advised that he (the CS) had recently been contacted by GELL. The CS further advised that GELL inquired when they would be able to conduct the transaction that they had previously spoken about, and that the CS had advised that it would occur this week. The CS told GELL that he (CS) would call GELL in a few days when he was ready.

10   On August 10, 2000, at approximately 10:10 a.m., the CS made a taped telephone call to GELL, advising him that he (the CS) would be ready to make the previously mentioned MDMA transaction in a few hours, and inquiring if GELL would be ready. GELL advised that it would not be a problem.

11.  On August 10, 2000, at approximately 12:45 p.m., the CS made a taped telephone call to GELL advising that he would have a one hour window to conduct the transaction starting at approximately 2:00 p.m. GELL again advised that would not be a problem, but

4

GELL instructed the CS to be certain that the money was ready.

12. On August 10, 2000, at approximately 1:30 p.m., the CS made a taped telephone call to GELL, advising that the money was ready, and requesting that GELL meet him (the CS ) in the area of Oakland Park Boulevard and North State Road 7. GELL refused and instructed the CS to meet him at "the restaurant." "The restaurant" is GELL's code for the apartment located at 8001 Fairview Drive, in Tamarac, Florida. The CS agreed to meet GELL at this location and advised that he (the CS) would arrive at approximately 2:45 p.m.

13. On August 10, 2000, at approximately 2:20 p.m., surveillance was established in the area of 8001 Fairview Drive. At approximately 2:44 p.m., S/A Scott Hahn observed GELL arrive at the location in his silver Porsche, Florida tag T66 BZM. GELL exited his vehicle and entered apartment 207. At approximately 2:50 p.m., the CS arrived in the parking lot of 8001 Fairview Drive. The CS called GELL on the telephone, and attempted to get him (GELL) to meet the CS at the parking lot. After several failed attempts to convince GELL to make the transaction in the parking lot, the CS left the area. At approximately 3:20 p.m., GELL exited the apartment carrying a brown paper bag. As GELL entered his vehicle, agents/officers effectuated the arrest of GELL without incident. Within the brown paper bag agents/officers found two plastic baggies containing approximately 2,000 MDMA tablets. The tablets and packaging weighed approximately 612.3 grams. ~~The~~ All the db tablets field tested positive for MDMA. ↳ involved in this case GPG

14. Based on the above listed facts, there is probable cause to believe that GELL has violated federal law in that he distributed and possessed with the intent to distribute a Schedule I controlled substance, that is Methylenedioxy Methamphetamine (MDMA),

5

commonly referred to as "ecstasy," in violation of Title 21, U.S.C. Section 841(a)(1)and

Title 18, U.S.C. Section 2.

FURTHER AFFIANT SAYETH NAUGHT.

Gregory P. Giacomino
Task Force Agent,
Drug Enforcement Administration

Sworn to and subscribed
before me this \1\_ day of August 2000.

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

6